**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

_____

|                              |     |                          |
|------------------------------|-----|--------------------------|
| In re:                       | )   | Chapter 7                |
|                              | )   | Case No. 13-13002-JEB    |
| MICHAEL J. MENDOZA,          | )   |                          |
|                              | )   |                          |
| Debtor.                      | )   |                          |
|                              | )   |                          |

_____

## MEMORANDUM OF DECISION

This matter came before me on the Motion for Sanctions ("Motion") filed by the within debtor, Michael J. Mendoza ("Debtor"). Pursuant to the Motion, the Debtor seeks sanctions against Joseph V. Medeiros, Jr. ("Medeiros") for willful violation of the automatic stay and for willful violation of the discharge injunction. The Court held an evidentiary hearing on the Motion on August 18, 2020. For the reasons set forth below, the Motion will be denied by separate order. The Debtor failed to prove there was a willful violation of the discharge injunction by Medeiros, or a willful violation of the automatic stay.

### I.      Background

The Debtor was the president and stockholder of Hot Bodeez Tanning Center, Inc. ("Corporation"). The Corporation operated tanning centers at several leased locations in Massachusetts. The Debtor personally guaranteed certain of the leases. As part of its operations, the Corporation leased premises at 22 Tarkiln Road, New Bedford, MA ("Tarkiln Premises") from Medeiros, as trustee of 22 Tarkiln Hill Nominee Trust.

In 2013, the Debtor and the Corporation encountered financial difficulties. On May 20, 2013, the Debtor commenced these proceedings ("Individual Proceedings") under Chapter 7 of the Bankruptcy Code. In addition, on May 20, 2013, the Corporation commenced proceedings ("Corporate Proceedings") under Chapter 7 of the Code, Case No. 13-13003.

Counsel for both the Debtor and the Corporation was Lawrence Hale. The Individual

Proceedings and the Corporate Proceedings were not jointly administered or substantively

consolidated.

In the Individual Proceedings, neither Medeiros nor 22 Tarkiln Hill Nominee Trust were

listed on the creditor matrix. Medeiros was included on the schedule of unsecured creditors in the

Individual Proceedings, however. In the Corporate Proceedings, Medeiros was listed on the

creditor matrix, but at the wrong address. Medeiros was included on the schedule of unsecured

creditors in the Corporate Proceedings, but at the wrong address.

On October 11, 2013, the Chapter 7 trustee filed a report of no assets in the Individual

Proceedings. On October 16, 2013, the Debtor received his discharge. The case was closed on

November 15, 2013.

After the bankruptcies were filed, the Corporation continued to operate the tanning center

at the Tarkiln Premises. In 2015, the Corporation could no longer pay the rent and vacated the

Tarkiln Premises. In December 2015, Medeiros filed a complaint ("State Court Action") in

Bristol Superior Court ('State Court") against the Corporation and the Debtor for unpaid rent,

including rent accrued prior to the bankruptcy filings. The Corporation and the Debtor filed an

answer in the State Court Action in February 2016. In the answer, the Debtor did not raise the

bankruptcy discharge as a defense.

After the Debtor and the Corporation failed to respond to discovery, the State Court

entered a default judgment against the Corporation and the Debtor on June 28, 2016. On

February 1, 2017, the State Court issued an execution on the judgment.

In March 2019, the Debtor filed a motion to reopen this case and the case was reopened

on March 14, 2019. The Debtor also filed the Motion, seeking sanctions against Medeiros for

violating the discharge injunction and the automatic stay.

The Court held an evidentiary hearing on the Motion on August 18, 2020. Direct testimony was submitted by affidavit and was supplemented by additional direct testimony at the hearing. The witnesses were also subject to cross-examination at the hearing.

## II.    Analysis

In the Motion, the Debtor seeks sanctions in the form of damages for the violation of the automatic stay and for willful violation of the discharge injunction. Pursuant to Section 362(c)(2) of the Bankruptcy Code, the automatic stay terminated upon the grant of the Debtor's discharge on October 16, 2013. Since the Debtor failed to allege any actions that occurred prior to that date, the Debtor failed to prove a claim for the violation of the automatic stay.

At the hearing, the Debtor sought to dispute any liability for the debt. The Debtor testified that it was not his signature on the lease. But the only issue before the Court is whether the debt was discharged, not other defenses to the Debtor's liability. In addition, in the answer filed in the State Court Action, the Debtor admitted as true the allegation that he had personally guaranteed the lease.

Having considered and resolved those issues, the issue that remains is whether Medeiros intentionally violated the discharge injunction under Section 524(a)(2) of the Code by pursuing the claim for prepetition rent. The starting point is whether the debt was discharged, or whether the debt was excepted from discharge under Section 523(a)(3) of the Code. Under Section 523(a)(3), a debt is excepted from discharge if the debt is "neither listed nor scheduled" in time to file a claim, unless the creditor had "notice or actual knowledge" of the case. 11 U.S.C. § 523(a)(3). The Code requires that for a debt to be discharged, the creditor must be listed on the matrix and that the creditor must be included on the schedules. A creditor who is not listed on the matrix does not receive notice of the bankruptcy proceedings. Even if a creditor is included on

3

the schedules, the failure to include the creditor on the matrix means that the debt is excepted

from discharge. *In re Lyman*, 166 B.R. 333, 337 (Bankr. S.D. Ill. 1994).

Section 523(a)(3) applies even though this is a no asset case. *Colonial Sur. Co. v.

Weizman*, 564 F.3d 526, 532 (1st Cir. 2009). In a no asset case, a debtor may seek to reopen the

case to add a creditor but bears the burden of demonstrating that the omission was "innocent"

and that the equities favor such addition. *Id*. In this case, the Debtor never sought to add

Medeiros to the matrix. Instead, the Debtor filed the Motion seeking sanctions. In addition, the

Debtor did not move to reopen the case until three years after litigation was commenced, and two

years after the execution was issued. During that time, the State Court conducted further hearings

in the case, including ruling on the Debtor's motions to enjoin collection efforts and to set aside

the default judgment. Given the significant delay, and the other actions occurring in the interim,

any belated attempt by the Debtor to add Medeiros to the creditor matrix to discharge the debt

would be inequitable. *See In re Gorsky*, 605 B.R. 277, 281 (Bankr. D. Mass. 2019).

Although Medeiros was listed on the schedules in the Individual Proceedings, he was not

included on the creditor matrix. Pursuant to Section 523(a)(3), any debt owed to Medeiros is

excepted from discharge unless Medeiros had "notice or actual knowledge" of the Individual

Proceedings. The burden of proof is on the Debtor to demonstrate by a preponderance of the

evidence that Medeiros knew about the Individual Proceedings. *In re Stratton*, 29 B.R. 93, 95

(Bankr. W.D. Ky. 1983).

The Court finds that the Debtor failed to meet his burden. The evidence offered by the

Debtor fails to prove that Medeiros had actual knowledge of the Individual Proceedings.

Although the evidence showed that Medeiros had notice of the Corporate Proceedings, this is not

evidence that he had knowledge of the Individual Proceedings. The cases were not jointly

administered or substantively consolidated. The Corporation was a separate entity from the

individual. The bankruptcy filing by the Corporation did not require the bankruptcy filing of its

stockholder, the Debtor. Although Medeiros learned that the Corporation filed bankruptcy, that

knowledge did not give him notice that the Debtor had also filed for personal bankruptcy.

The Debtor's conversations with Medeiros do not establish that Medeiros had notice of

the Individual Proceedings. The Debtor testified that he told Medeiros that he was filing for

bankruptcy and that he did not think he would be able to keep up the rent payments. Affidavit of

Michael J. Mendoza ¶ 19 ("Mendoza Affidavit"). Although I find that the Debtor's testimony on

the conversations was credible, I find that the testimony fails to show that Medeiros had

knowledge of the Debtor's personal bankruptcy. Throughout his testimony, the Debtor did not

distinguish between the Corporation and himself. For example, although the Corporation leased

the real estate and the equipment, the Debtor testified that

> In 2011-2012, I started to fall behind in making all of the equipment lease payments as
> well as the payment for some of my rental space.

Mendoza Affidavit ¶10. The tenant under the lease was the Corporation, not the Debtor

personally. The Debtor discussed the rent payments, which were obligations of the Corporation,

with Medeiros. The Debtor admitted that he did not tell Mendoza that bankruptcy cases were

being filed by both the Corporation and the Debtor. Transcript of August 18, 2020, Hearing

("Tr."), p. 24.

The Debtor admitted that the initial conversation occurred before the bankruptcy filings.

Tr. p. 22-23. The Debtor testified that in the conversations he told Medeiros that he was "filing"

bankruptcy, not that the Corporation and he had already filed bankruptcy. Tr. p. 24, 25.

Information that someone may file bankruptcy in the future is not actual knowledge of the

subsequent bankruptcy. *In re Bosse*, 122 B.R. 410, 413 (Bankr. C.D. Cal. 1990).

The Debtor also offered the testimony of Lawrence Hale, counsel to the Debtor and counsel to the Corporation. Hale testified that he had a telephone conversation with Medeiros after the bankruptcy filings. Although Hale testified that he advised Medeiros "of the bankruptcies," he also testified that Medeiros was "pretty upset" and the conversation was "relatively short." Tr. p. 43.  On cross examination, Hale again testified that the conversation was "relatively short" and "not that pleasant" since Medeiros complained about "being stiffed." Tr. p. 50.

In his testimony, Medeiros denied having any conversations about the bankruptcy filings with either the Debtor or Hale. I do not find Medeiros credible. Medeiros repeatedly contradicted his own testimony on several points. In addition, he contradicted the statements provided in his sworn affidavit filed in the State Court Action. Given his conflicting testimony, I have disregarded the testimony of Medeiros.

While I found Hale credible, I find that his testimony alone is not sufficient to sustain the Debtor's burden of proof. Hale represented the Corporation, as well as the Debtor. As Hale noted, Medeiros was concerned with the loss of rent, which was owed by the Corporation. Hale also stated that the conversation was short and that Medeiros was "upset." Although Hale testified that he told Medeiros about "the bankruptcies," there was no testimony that he specifically discussed the Individual Proceedings. Based on the conversation, Medeiros knew that the Corporation had filed bankruptcy. But the brief conversation does not reflect that there was a clear discussion about the Debtor's personal bankruptcy. Absent additional evidence, I find that the conversation alone does not show that Medeiros had knowledge of the Individual Proceedings.

The Debtor offered no other evidence that Medeiros had notice of the Individual Proceedings prior to the closing of the case in 2013. Although the evidence demonstrated that Medeiros knew about the Corporate Proceedings, that knowledge did not give Medeiros actual notice of the Individual Proceedings. John Coyne, counsel for Medeiros in the State Court Action, testified that Medeiros told him that the Corporation had filed bankruptcy in 2015. Coyne also testified that Medeiros provided him with a list of creditors from the Corporate Proceedings. The evidence included the list of creditors dated June 25, 2013, that Medeiros had provided to Coyne. But the list was from the Corporate Proceedings, not the Individual Proceedings. There was no evidence that Medeiros or prior counsel had reviewed the Individual Proceedings.

### III.    Conclusion

I find that the debt was not discharged under Section 523(a)(3) because Medeiros was not listed on the creditor matrix and had no actual notice of the Individual Proceedings. Since the debt was not discharged, I find that there was no violation of the discharge injunction.

For the foregoing reasons, the Motion will be denied by separate order.

By the Court,

Dated: March 11, 2022

Janet E. Bostwick
United States Bankruptcy Judge